IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPORTS ARENA MANAGEMENT, INC., d/b/a AMERICAN HEARTLAND ICE ARENA, and 7373 N. CICERO PROPERTY, LIMITED PARTNERSHIP, an Illinois Limited Partnership,<br><br>Plaintiffs,<br><br>v.<br><br>GREAT AMERICAN INSURANCE GROUP and HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY,<br><br>Defendants. | Civil Action No.: 06 C 0788<br><br>Suzanne B. Conlon, Judge |

## MEMORANDUM OPINION AND ORDER

Sports Arena Management, Inc. ("American Heartland") and 7373 N. Cicero Property, Limited Partnership ("the 7373 Partnership") sued Great American Assurance Company ("Great American")[1] and Hartford Steam Boiler Inspection and Insurance Company ("Hartford") for declaratory judgment, breach of contract, and vexatious conduct after Great American denied insurance coverage for a damaged ice rink plaintiffs owned and operated. Defendants move for summary judgment in three separate motions. For the reasons stated below, defendants' joint summary judgment motions are granted. Hartford's independent summary judgment motion is moot.

---

[1] Great American was incorrectly sued as "Great American Insurance Group." Ans. at ¶ 3, Dkt. No. 20 (Apr. 21, 2006).

## BACKGROUND

The following facts are undisputed unless otherwise noted. American Heartland and the 7373 Partnership owned and operated an ice arena in Lincolnwood, Illinois. Def. Facts at ¶ 4. The ice arena's two rinks consist of concrete slabs laid over insulation material resting on sand and gravel. Pl. Facts at ¶ 1. In order to produce ice, water is sprayed over the concrete slabs, which are cooled by a network of imbedded pipes. *Id.* at ¶ 2. The pipes carry a calcium chloride brine solution chilled by an ammonia refrigerant from a refrigeration system. *Id.* This process is referred to as a "cold brine system." *Id.* Under the concrete slab in the sand/gravel layer is another network of pipes carrying a warm calcium chloride brine solution heated by a heat exchanger. *Id.* at ¶ 3. This "warm brine system" is used to prevent permafrost from forming under the concrete, which could cause the ice rink floor to heave and crack as the permafrost expands. *Id.*

In September 2002, the ice arena operators discovered that the heat exchanger was malfunctioning; ammonia leaked from the cold brine system into the warm brine system. Def. Facts at ¶¶ 37, 38. The operators closed the ammonia feed to the heat exchanger, shut down the warm brine system, and ordered a replacement heat exchanger. *Id.* at ¶ 39. Eventually, the warm brine system was restored after ammonia was flushed from the system and the heat exchanger replaced. *Id.* at ¶ 41. The parties dispute the length of time the warm brine system was inoperable and whether ice remained in the rinks during that time.

Sometime later, the ice arena operators discovered more problems with the warm and cold brine systems. The refrigeration system froze and had to be thawed. Pl. Facts at ¶ 9. The warm brine system appeared to be losing fluid and was valved off. Def. Facts at ¶ 45. When the ice melted during the ensuing repairs, leaks in the cold brine system's piping were detected. Pl. Facts at ¶ 10.

2

It also was apparent that the concrete slabs of both ice rinks had heaved and cracked. *Id.* American Heartland excavated parts of the concrete to fix the leaks. Def. Facts at ¶ 45. It discovered the warm brine system's pipes were heavily corroded and crumbled when touched. *Id.* at ¶ 50; Pl. Facts at ¶ 13. The parties agree that corrosion of the pipes and the formation of permafrost caused the ice rink's damage. Pl. Facts at ¶ 26.

In February 2004, American Heartland submitted a claim to Great American for the damage under its commercial property and liability policy. Def. Facts at ¶¶ 7, 56, 57. Great American investigated the claim by retaining consultants and inspecting the ice arena. *Id.* at ¶¶ 58, 59. The parties met repeatedly to discuss the investigation and the policy's coverage. *Id.* at ¶¶ 59, 60. On November 24, 2004, Great American denied coverage, predicated primarily on policy exclusions related to underground pipes, earth movement, and corrosion. *Id.* at ¶¶ 15, 16, 19, 21, 22, 62; Ex. B at PL1124, 1144, 1157-58, 1183. On February 10, 2006, plaintiffs sued Great American and Hartford for declaratory judgment, breach of the insurance policy, and for vexatious and unreasonable conduct under Section 155 of the Illinois Insurance Code. *Id.* at ¶ 63.

## ANALYSIS

Hartford and Great American jointly move for summary judgment on the declaratory judgment and breach of contract counts. They contend the policy excludes coverage, there was no fortuitous loss, and the action is time-barred. The joint motion asserts the 7373 Partnership is not insured under the policy. A separate joint motion by Hartford and Great American seeks summary judgment on the vexatious conduct count because there was a *bona fide* dispute over coverage. Hartford independently moves for summary judgment, arguing it is not liable to plaintiffs as Great American's reinsurer.

3

## I. Summary Judgment Standards

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant has the initial burden of demonstrating it is entitled to summary judgment. *Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Once the movant has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Cont'l Cas. Co.*, 427 F.3d at 1041. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *Id*. A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Defendants' Joint Motion for Summary Judgment on the Declaratory Judgment and Breach of Contract Counts

Defendants' summary judgment motion is focused primarily on the insurance policy's exclusions and limitations. Defendants contend there is no genuine issue of material fact that the policy exclusions' plain language bars coverage. According to defendants, the policy broadly excludes damages caused by corrosion, earth movement, and underground piping. Because there is no dispute that corrosion and permafrost (*i.e.*, expanding frozen soil) caused the ice rink to heave and crack, defendants contend these exclusions apply as a matter of law. Plaintiffs counter that the "root cause" of the damage was the malfunctioning refrigeration system, which is an "equipment breakdown" covered under the policy. Plaintiffs employ a proximate cause theory, arguing that corrosion and permafrost are mere links in the causal damage chain; therefore, the exclusions do not

4

apply. Plaintiffs further argue competing expert reports create a factual dispute whether the exclusions apply.

Plaintiffs' proximate cause theory is foreclosed by Seventh Circuit law directly repudiating the use of tort analysis in construing insurance policies. *Transamerica Ins. Co. v. South*, 125 F.3d 392, 398 (7th Cir. 1997) ("importation of tort principles of proximate cause into the consideration of insurance policies is inappropriate"); *Spearman Indus., Inc. v. St. Paul Fire and Marine Ins. Co.*, 139 F. Supp. 2d 943, 947 (N.D. Ill. 2001) (Alesia, J.). This court must interpret the insurance policy under contract principles, giving effect to the parties' intent based on the plain meaning of the terms used. *Id.*; *Hurst-Rosche Eng'r, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995); *Strzelczyk v. State Farm Mut. Auto. Ins. Co.*, 485 N.E.2d 1230, 1232 (Ill. App. Ct. 1985).

The policy's plain language is undisputed and unambiguous. The policy's "special form regarding causes of loss" indicates at least two exclusions apply to bar plaintiffs' claim. First, the earth movement exclusion states:

> 1. We will not pay for loss or damage caused *directly or indirectly* by any of the following. Such loss or damage is excluded *regardless of any other cause or event that contributes concurrently or in any sequence to the loss.* * * *
>
>    b. Earth Movement
>
>       (4) *earth sinking* (other than sinkhole collapse), *rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations* or other parts of realty. *Soil conditions include contraction, expansion, freezing, thawing,* erosion, improperly compacted soil and the action of water under the ground surface.

Def. Facts at ¶ 21 (quoting Ex. B at PL1157-58 (emphasis added)).

The exclusion broadly limits coverage for rising or shifting soil caused by freezing or

5

expansion. Plaintiffs do not dispute that expanding permafrost caused the ice rink to heave and crack. Pl. Facts at ¶¶ 3, 26. Thus, there is no genuine issue of material fact that the exclusion bars coverage. *Celotex*, 477 U.S. at 322. Plaintiffs' novel argument that permafrost is not soil but rather lenses of expanding ice is unavailing. Permafrost is uniformly defined as "permanently frozen subsoil." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 875 (1984); *see also* OXFORD DESK DICTIONARY 587 (1997) ("subsoil that remains frozen throughout the year"). Plaintiffs' assertion that the exclusion is limited to naturally occurring events is contradicted by the policy's plain language. The cases plaintiffs cite are distinguishable on that ground. *See e.g., Gullett v. St. Paul Fire and Marine Ins. Co.*, 446 F.2d 1100, 1102 (7th Cir. 1971) (exclusion limited to "earthquake, volcanic eruption, landslide or any other earth movement"); *Mattis v. State Farm Fire and Cas. Co.*, 454 N.E.2d 1156, 1160 (Ill. App. Ct. 1983) (exclusion limited to types of earth movements expressly stated, such as earthquake, volcanic eruption, landslide, and mudflow).

Second, the corrosion exclusion states:

> 2. We will not pay for loss or damage *caused by or resulting from any of the following*:
>
>    d. (2) rust, *corrosion*, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
>
>    (4) *settling, cracking, shrinking or expansion*

Def. Facts at ¶ 21 (quoting Ex. B at PL1157-58 (emphasis added)). Plaintiffs do not dispute corrosion caused the damage. Pl. Facts at ¶¶ 26. The specific type of corrosion or its cause is irrelevant given the policy's clear language. *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. Wausau Paper Mills Co.*, 818 F.2d 591, 594 (7th Cir. 1987) (term "corrosion" broadly defined as wearing

6

away or alteration by chemical or electrochemical process). Plaintiffs fail to offer any argument why the "cracking, shrinking or expansion" clause does not bar the claim. Accordingly, summary judgment is appropriate because there is no genuine factual dispute that the corrosion exclusion bars plaintiffs' claim.

Because the earth movement and corrosion exclusions apply, the court need not address the policy's additional exclusions and limitations.[2] Nor is it necessary to address defendants' alternative arguments for summary judgment, or Hartford's separate motion based on its status as Great American's reinsurer.

### III. Defendants' Joint Motion for Summary Judgment on the Vexatious Conduct Count

Defendants contend summary judgment should be granted on the vexatious and unreasonable conduct count because there is no issue of genuine material fact that there was a *bona fide* coverage dispute. Plaintiffs counter that liability under Section 155 of the Illinois Insurance Code is a factual issue inappropriate for summary judgment. Plaintiffs contend defendants' conduct was unreasonable because they denied coverage after a cursory and deficient investigation. Opp'n Memo. at 3, Dkt. No. 42 (Jan. 8, 2007).

Section 155 authorizes attorneys fees and costs for insureds if an insurer's actions are "vexatious and unreasonable." 215 ILCS 5/155. This provision does not apply when an insurer takes an unsuccessful litigation position; the evidence must show the insurer's behavior was "willful and without reasonable cause." *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 200 F.3d 1102,

---

[2]Plaintiffs' argument that there is a factual dispute regarding the equipment breakdown endorsement lacks merit. Although the endorsement provides American Heartland additional coverage, the earth movement and corrosion exclusions plainly apply to the endorsement. Def. Facts at ¶ 22 (quoting Ex. B at PL1183).

7

1110 (7th Cir. 2000). Section 155 does not apply if: (1) there is a *bona fide* dispute over the insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled legal issue. *Id.*; *Spearman*, 139 F. Supp. 2d at 949. Because the statue is "penal in nature," it must be strictly construed. *Citizens*, 200 F.3d at 1110 (quoting *Morris v. Auto-Owners Ins. Co.*, 606 N.E.2d 1299, 1305 (Ill. App. Ct. 1993)).

There is no genuine issue of material fact that there was a *bona fide* dispute regarding coverage. The policy's exclusions bar coverage. Great American cannot be liable under §155 for properly rejecting plaintiffs' claim. *See Johnson Press, Inc. v. Northern Ins. Co.*, 791 N.E.2d 1291, 1301 (Ill. App. Ct. 2003) (defendant cannot be liable under §155 where no benefits are owed). Even if there were triable issues regarding coverage, defendants are still entitled to summary judgment. It is undisputed that corrosion and permafrost caused the ice rink's damage. Pl. Facts at ¶ 26. The policy contains exclusions specific to loss caused by corrosion and earth movement. Def. Facts at ¶ 21 (quoting Ex. B at PL1157-58). Great American had a legitimate policy defense based on the exclusions. *Citizens*, 200 F.3d at 1110. Further, it is undisputed that Great American promptly and extensively investigated the claim, retained consultants and experts, inspected damaged areas of the ice arena, and met with plaintiffs regarding the investigation. Def. Facts at ¶¶ 58-62. Plaintiffs offer only unsupported assertions that defendants "whitewashed" the investigation and intentionally diverted documents to improperly deny coverage. Opp'n Memo. at 4, Dkt. No. 42 (Jan. 8, 2007). In short, plaintiffs fail to present anything more than an honest dispute regarding liability under the policy. *Spearman*, 139 F. Supp. 2d at 950.

## CONCLUSION

For the reasons set forth above, defendants have demonstrated there are no genuine issues of material fact regarding the declaratory judgment, breach of contract, and vexatious conduct counts. Defendants' joint motions for summary judgment are granted. Hartford's independent motion for summary judgment is moot.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

March 1, 2007